**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CYNTHIA MCLAREN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 14 C 9689** |
| ) | |
| **WHEATON COLLEGE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Cynthia McLaren has sued Wheaton College alleging that it wrongfully interfered with her right to take leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, and terminated her in retaliation for attempting to exercise that right. McLaren has moved for summary judgment on her interference claim (count 1), and Wheaton College has moved for summary judgment on both of McLaren's claims. For the reasons stated below, the Court denies both motions.

### Background

The following facts are undisputed except where otherwise indicated. McLaren began working as a part-time custodian at Wheaton College, a private university near Chicago, in September 2010. Two months later, she began working full-time as a night custodian at the College. This job required her to maintain her assigned building by cleaning common areas, vacuuming and sweeping, removing trash, changing light bulbs, and doing whatever other general maintenance was required to ensure that the

building would look clean and presentable in the mornings.

McLaren started to struggle with tardiness and absenteeism almost immediately upon beginning full-time employment with the College. In January 2011, she received a 90-day evaluation that indicated she was failing to meet the College's attendance and punctuality expectations. McLaren's supervisor at the time, Jeremy Cheek, wrote in her evaluation that she was occasionally tardy and had missed several days of work. In her next performance evaluation at the end of March 2011, Cheek wrote that McLaren's work was excellent and that she was motivated, cooperative, and receptive to instruction. He also noted, however, that McLaren needed to improve her attendance, writing that she "had difficulty arriving on time" and that attendance was "a recurring problem." *See* Def.'s Ex. 2, dkt. no. 35-2, at 74. McLaren also contributed to the evaluation and acknowledged that her attendance had been subpar. She wrote: "My attendance has not been perfect, a family death out of town and a few sick days have caused me to take off more than I have wanted." *Id.*

In September 2011, Cheek delivered a memorandum to McLaren from Paul Dillon, the College's Custodial Operations Manager and Cheek's direct supervisor. In the memorandum, Dillon stated that he had "ongoing concerns with [McLaren's] performance," specifically, her "attendance and tardiness," about which he noted Cheek had recently issued a verbal warning. *Id.* at 75. He observed that McLaren's struggles with attendance and tardiness had been noted in her 90-day evaluation and her year-end evaluation and had been discussed with her on multiple occasions. Although her performance "improved slightly for a short time," Dillon stated that she "did not sustain these improvements." *Id.* Dillon specified areas of concern, including that McLaren had

missed eleven days in a fifteen-week period and fifteen days (excluding planned leave) that calendar year. Dillon informed McLaren that the College counted on her attendance and that it was "imperative" that her attendance and punctuality "improve immediately." *Id.* McLaren disputes that she understood that failure to address Dillon's concerns could result in discipline, but she does not dispute that she signed the memorandum, in which Dillon wrote that "failure to adhere to these concerns will result in further discipline which could include suspension or termination of your employment at Wheaton College." *Id.*

McLaren started experiencing back pain in September 2011 and began treatment for this condition in December 2011. Sometime later, McLaren discussed FMLA leave with the College's benefits specialist, Karyn Granger. Granger was responsible for administering the College's FMLA policy, which "permits eligible employees to take up to twelve weeks of unpaid, job-protected family, medical, or qualifying exigency leave . . . in a 12-month period." Def.'s Ex. 1A, dkt. no. 35-1, at 7. The College's official FMLA policy is contained in its employee handbook, which employees (including McLaren) receive when the College hires them. To obtain FMLA leave under the College's FMLA policy, the handbook provides that "employees are required" to follow a five-step notice regiment:

1.  Notify the Human Resources Department of the need for leave. When providing such notice, employees must provide sufficient information to permit a determination of whether the leave may qualify for FMLA protection as well as the anticipated timing and duration of the leave.

2.  Inform the supervisor of the requested leave.

3.  Comply with any requirements about which you are notified, such as the timely submission of an FMLA Certification form to the

Human Resources Department.

4.      In the event FMLA leave is granted, continue to communicate with both the supervisor and the Human Resources Department about the progress of the leave and return-to-work date, providing additional certifications as requested by the Human Resources Department.

5.      In situations where leave is taken intermittently for a reason for which FMLA leave has been granted, report each instance in which leave is taken by submitting a time card or faculty absences report in accordance with payroll submission deadlines. Designate FMLA hours as such on documentation. When reporting such leave, either reference the FMLA or state the approved reason for which leave is being taken.

*Id.* at 8. The handbook clearly states that "failure to comply with all of the foregoing notice requirements may result in the employee's request for FMLA leave being delayed or denied, and may result in other employment consequences if the employee's absence is not otherwise authorized." *Id.*

McLaren testified that she could not possibly have requested FMLA leave during her meeting with Granger in December 2011 or January 2012 because at that point she had not yet had the MRI exam that would reveal the seriousness of her back condition. FMLA leave did come up in this meeting, however, and after McLaren's physicians certified that she had four compressed discs in her back and required extensive treatment, McLaren received notice of her eligibility, rights, and responsibilities under the FMLA. In March 2012, McLaren received an FMLA Designation Notice indicating her request for intermittent FMLA leave had been approved.

Because McLaren's back injury began to cause her to miss work in December 2011, human resources deemed her rolling FMLA year to begin on December 1, 2011. McLaren met with the College's payroll staff to identify any days she had missed due to

her back pain since December 1, 2011. From March until September 2012, whenever McLaren was absent from work due to her back injury, she did not meet with human resources to report her absences. Instead, she notified her supervisor that she would be missing work and indicated on her timesheet that she was taking FMLA leave. McLaren received periodic memoranda that informed her on a biweekly basis which days were being designated as FMLA leave and updated her on how much FMLA leave she had used. Because these memoranda were regularly delivered and replete with detail, McLaren was always aware of the amount of FMLA leave she had used and how much she had left. On August 1, 2012, Granger e-mailed McLaren to inform her that she had only 29 hours of FMLA leave time remaining before the new FMLA year began on December 1.

Karen Tucker, the College's Director of Human Resources, ordinarily met with employees who were close to exhausting their FMLA allotment to discuss what running out of leave meant and what would happen next. In these conversations, Tucker would alert employees that they were close to using the maximum 480 hours of leave for the year and inform them of the implications of running out of FMLA time. Tucker had one of these conversations with McLaren on August 15, 2012. Neither Tucker nor McLaren could testify regarding exactly how much FMLA time McLaren had left as of that date, but both testified that McLaren was either out of FMLA hours or would be soon. Tucker reminded McLaren that this meant it was important that she maintain a consistent attendance record at least until the new FMLA year began on December 1. In late August or early September, McLaren used up her remaining FMLA hours.

In early September, McLaren met with Tucker, Dillon, and Freddie Washington,

who had replaced Cheek as McLaren's direct supervisor in July 2012.  At that meeting, McLaren discussed many of the same topics she had discussed with Tucker a few weeks earlier, including her FMLA hours.  During her deposition, McLaren also testified that at this same meeting, she alerted Tucker, Dillon, and Washington of her intent to schedule back surgery for December 2012, when she would have FMLA time again.

Despite knowing that she was out of FMLA time, McLaren continued to rack up absences after this meeting.  According to the College's records, McLaren was absent from work nine times between September 12, 2012 and November 7, 2012.  McLaren's timecards indicate that she took eight hours of sick leave on September 12 and eight hours of personal leave on each of October 3, 4, 5, 16, 17, 18, 19, and November 7.  E-mails between Dillon and Tucker described the reasons she purportedly gave for her absences, including a cold, an infection from a wisdom tooth extraction, general sickness, and a family member's illness.  Tucker testified that McLaren never indicated that these unplanned absences were related to her back pain.  McLaren could not recall whether she did or did not indicate that she was taking time off due to her back pain, but she testified that it was likely that her back injury was why she missed time.  McLaren therefore disputes whether she provided the reasons indicated in the College's records and recalled by witnesses, and she could not recall the precise dates of her absences when asked about them in her deposition.  McLaren does not, however, dispute that she did not report to work on multiple occasions in this time frame.

Tucker drafted a final written warning for McLaren in early November 2012.  Ziggy Abay, who by this time had replaced Washington as McLaren's direct supervisor, issued the final warning on November 14, 2012.  The warning read:

Cindy, as discussed with you in the past by Jeremy Cheek and more recently with myself, Paul Dillon and Karen Tucker, attendance is a critical component of your role. Your recent absences—9/13, 10/4, 5, 6, 17, 18, 19, 20 and 11/7 are excessive. This represents nine days away in less than two months. When you are away from work, it creates a tremendous hardship for our business operations.

Given your position as a custodian, it is imperative this pattern improves immediately. Please consider this a final warning regarding this issue. Failure to maintain a consistent attendance pattern will result in further disciplinary action, up to and including termination.

Def.'s Ex. 2, dkt. no. 35-2, at 53. Both McLaren and Abay signed the letter.

McLaren testified that "sometime in November" 2012, "either Karyn Granger or Nancy" Frey, an employee in the payroll department, "called [her] down" to human resources "to tell [her] . . . that [she] didn't need to do anything" to renew her FMLA leave starting December 1, 2012. McLaren Dep., dkt. no. 45-1, at 211:11–15.

According to McLaren:

Prior to December 1st of 2012 I was called down one morning and just told it's a new umbrella, you know, a new calendar year for the FMLA. I—they just wanted to tell me and I—it was either Karyn Granger or Nancy, that I didn't need to do anything because I was still under medical treatment. I didn't need to like refill the paperwork out because the new calendar year started over. . . . It was either Karyn Granger or Nancy just saying FYI, you don't [ ] need to fill out all the FMLA paperwork, your new calendar year goes into effect December 1st. And because you're under medical treatment, you don't—you don't have to, you know, refill out any paperwork. . . . I left the office with no documentation.

*Id.* at 211:9–18, 212:1–8. In an affidavit submitted after her deposition, McLaren asserted instead that it was "either Karen [sic] Granger or Mary Haddock" she spoke to about her "renewed FMLA which would begin on December 1, 2012." Pl.'s Ex. 2, dkt. no. 38-8, ¶ 41. McLaren attested to asking Granger or Haddock "what I needed to do to 're-start' my FMLA beginning on December 1, 2012." *Id.* ¶ 42. In her affidavit, McLaren again asserted that the person she spoke to said she did not "'need to do anything to

restart [her] FMLA, it happens automatically on December 1, 2012.'" *Id.* ¶ 43.

According to McLaren's affidavit, she was "told by Defendant 'we have all your

paperwork, the medical issue is the same, nothing has changed so nothing new has to

be submitted to restart your FMLA on December 1, 2012'." *Id.* ¶ 44. Both Granger and

Haddock deny ever speaking with McLaren in November 2012 about FMLA leave.

McLaren appears to have missed work again on December 3 and December 4,

2012. The College contends that McLaren called in sick both days, as evidenced by an

entry Abay wrote in her virtual calendar stating that McLaren "called in sick" and Abay's

testimony (relying on this entry) to the same effect. McLaren could not recall missing

work on December 3, but her timecard indicates that she took eight hours of personal

leave that day. McLaren recalled calling off work the evening of December 4, as her

timecard indicates, but she could not recall the reason she gave to Abay for her

absence. She testified that she probably mentioned having back problems and pain at

the time, but she could not precisely recall. Abay, meanwhile, testified that McLaren

simply called in sick; she did not recall McLaren mentioning her back problem. In fact,

Abay testified that she first learned of McLaren's back problems when she filed suit

against the College two years later.

Tucker testified that as far as the human resources department was concerned,

these were simply two more unexpected and problematic absences on McLaren's

record. McLaren never contacted human resources about either of these absences, nor

did she ever reach out to human resources after the new FMLA year began on

December 1, 2012, to discuss reapplying for FMLA leave. After McLaren's absence on

December 3, Tucker made the decision to terminate McLaren's employment. Before

McLaren's shift began on the evening of December 6, 2012, Dillon informed McLaren that her employment had been terminated due to her absenteeism.

McLaren sued in December 2014 and filed an amended complaint in June 2015. In her amended complaint, McLaren asserted two claims for relief. First, she alleged that the College and Granger, individually and in her official capacity as an "employer" under the FMLA, terminated her in retaliation for invoking her right to take FMLA leave in violation of 29 U.S.C. § 2615(a)(2). Second, McLaren alleged that the College interfered with her ability to exercise her rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1). The College has moved for summary judgment on both of McLaren's claims. McLaren has cross-moved for summary judgment on her interference claim.

### Discussion

"The FMLA allows an eligible employee with a serious health condition that renders the employee unable to perform her position to take twelve workweeks of leave during each twelve-month period." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 992 (7th Cir. 2010) (citing 29 U.S.C. § 2612(a)(1)(D)). Eligible employees may also use FMLA leave to care for members of their immediate family who have serious health conditions. 29 U.S.C. § 2612(a)(1)(C). An employer subject to the FMLA may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. *Id.* § 2615(a)(1). An employer also may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. *Id.* § 2615(a)(2). The Seventh Circuit has interpreted section 2615(a)(2) as establishing a cause of action for retaliation. *See Goelzer*, 604 F.3d at 992; *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008).

McLaren has alleged that the College interfered with her exercise of her FMLA rights and terminated her in retaliation for taking or attempting to take FMLA leave. Wheaton College has moved for summary judgment on both of McLaren's claims. It contends that the evidence in the record would not permit a reasonable jury to find that the College interfered with McLaren's right to take FMLA leave or retaliated against her for invoking her rights under the FMLA. McLaren argues that summary judgment should be granted in her favor on her interference claim and that the evidence presents a genuine dispute of material fact requiring a jury's consideration of her retaliation claim.

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, [the Court] review[s] cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks omitted).

## A.     FMLA retaliation claim (count 1)

To survive a motion for summary judgment on her claim of retaliation under the FMLA, McLaren must "submit evidence showing that [the College] demoted or fired her because she took valid leave." *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir. 2008). "To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer*, 604 F.3d at 995 (internal quotation marks omitted).

"A plaintiff alleging a retaliation claim under the FMLA may proceed under the direct method of proof or the indirect method of proof." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015). McLaren has attempted to proceed under both methods, and the College contends that she has failed on both fronts.

The Court begins by addressing McLaren's attempt at the indirect method of proof. The indirect method of proof requires the plaintiff to establish a prima facie case of discrimination in order to create a presumption of discrimination. To establish a prima facie case, a plaintiff must demonstrate: "(1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 634–35 (7th Cir. 2009). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a "legitimate, noninvidious reason" for the adverse employment action. *Id.* at 635. If the defendant

11

satisfies its burden of production, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual. *Id.*

Setting aside McLaren's performance for the time being, McLaren has failed to adduce evidence that establishes a prima facie case of discrimination because she has failed to offer admissible evidence from which a reasonable jury could find that she was treated less favorably than similarly situated employees who did not take or attempt to take FMLA leave. For comparator evidence, McLaren has offered timecards and e-mail correspondence between other employees and their supervisors and human resources personnel. She has also offered an affidavit in which she purports to have personal knowledge concerning "[d]ozens of other employees [who] are similarly situated to [her], in that Defendant had proposed [her] termination after a mere three days of absence in September of 2012" and "[h]undreds of other employees [who] were absent for three days without discipline or termination, yet when [she] missed three days, just after [her FMLA was exhausted in September of 2012, [her] supervisors were ready and anxious to terminate [her]." Pl.'s Ex. 1, dkt. no. 38-2, ¶¶ 4–5.

There are several problems with this evidence. First, the record is devoid of any indication that McLaren knows any of the employees she references, was a party to any of their conversations with their supervisors or human resources personnel, or has the knowledge, access, or experience necessary to interpret the documents she claims to be interpreting in her affidavit. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 602 ("A witness may testify

to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  McLaren claims she has "personal knowledge" about the representations she makes in her affidavit, but it appears that her personal knowledge consists of what she has learned through reviewing discovery produced in this litigation.  "At summary judgment, . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact."  *United States v. 5443 Suffield Terrace, Skokie*, 607 F.3d 504, 510 (7th Cir. 2010).

Second, the employment records and correspondence between College officials and other employees would not permit a reasonable jury to find that the employees in question truly were similarly situated to McLaren.  For example, nobody with personal knowledge has testified or otherwise attested that these individuals were full-time custodians like McLaren or held similar positions for which regular attendance was both expected and important.  Comparators need not be identical to the plaintiff bringing a retaliation claim, but "the proposed comparator[s] must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision."  *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012).  Simply put, the evidence McLaren has proffered to support her retaliation claim is wholly insufficient to withstand summary judgment by way of the indirect method of proof.

A plaintiff proceeding under the direct method of proof must show:  "(1) [s]he engaged in a protected activity; (2) [her employer] took adverse employment action against h[er]; and (3) there is a causal connection between [her] protected activity and

[her employer's] adverse employment action."  *Cracco*, 559 F.3d at 633.  "Under the direct method, proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion, but rather, includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences."  *Id.* (internal quotation marks omitted).

The College does not dispute that McLaren engaged in protected activity between December 2011 and early September 2012, nor does it dispute that it took adverse employment action against McLaren when it terminated her in early December 2012.  The College contends, however, that McLaren did not engage in protected activity in early December 2012 because she failed to adhere to the College's notice policy for FMLA leave and therefore never actually requested or took FMLA leave on December 3 or 4, 2012.  It also contends that McLaren's sole evidence of causation is the temporal proximity of her purported invocation of rights under the FMLA and her termination.  Without more, the College argues, McLaren cannot show that there is a causal connection sufficient to make out a prima facie case of discrimination under the direct method of proof.

The Court disagrees with the College's second point.  The evidence indisputably shows that the College issued a last-chance warning to McLaren in November 2012.  It also shows that McLaren did not accrue any more absences after receiving this reprimand until her alleged absence on December 3, 2012, and the College does not argue otherwise.  According to the College's own statement of undisputed material facts, Tucker made the decision to terminate McLaren "[a]fter learning that McLaren had incurred another absence on December 3, 2012."  Def.'s Stat. Material Facts, dkt. no.

35, ¶ 55.  Tucker testified that although she had discussed with McLaren her attendance problems and the possibility of termination, it was not until "she missed— when she had another occurrence on the 3rd[—that] we decided that her pattern of attendance was not consistent enough to meet expectations.  So we decided to terminate."  Tucker Dep., dkt. no. 35-4, at 172:17–22.  A reasonable jury could conclude that McLaren's "pattern of attendance" during September, October, and November caused her termination.  But it could also conclude, based on this evidence, that McLaren's December 3 absence caused the College to take adverse employment action against her.

This does not matter, however, if McLaren's absence in early December was not "protected activity" under the FMLA.  There is not direct or circumstantial evidence that McLaren's use of FMLA leave from December 2011 through early September 2012 had any causal connection to her termination.  If McLaren's absence in early December was not an FMLA absence, but was rather merely another unexcused absence in a string of unexcused absences about which she had been previously reprimanded and warned of future consequences (including termination), then McLaren would be unable to succeed under the direct method of proof.

The College contends that McLaren's absence was just that—an unexcused absence like the several others she accrued during the three preceding months after using up all of her FMLA leave for the year.  The College argues that although it was aware that McLaren had a serious medical condition that qualified her for FMLA leave beginning in December 2011, she did not follow established procedures to reapply for FMLA leave to begin in December 2012 either prior to or at the time she missed work

early that month.  It is undisputed that when McLaren called off work on December 3 and 4, 2012, she called only Abay (her supervisor at the time) and nobody from human resources.  Additionally, Abay's records indicate that McLaren merely called in "sick"; Abay testified that McLaren did not mention her back injury or invoke the FMLA, and McLaren testified that although she "probably" mentioned back pain when she called, she could not recall whether she gave Abay a reason for her absence.  The College argues that McLaren lacks evidence to proceed under the direct method of proof because the evidence shows either that she did not engage in protected activity or that doing so did not motivate her termination because the College had no way of knowing that her absences on December 3 and 4, 2012 were FMLA absences.

McLaren and the College bitterly dispute what the College's notice policy is, what the College has represented it to be in this litigation, and whether McLaren abided by it when or before she missed work in early December 2012.  As explained above, the evidence indisputably shows that the College's written policy sets forth a multi-step notice procedure.  An employee who wishes to take FMLA leave must first notify the human resources department that she needs FMLA leave, providing "sufficient information to permit a determination of whether the leave may qualify for FMLA protection as well as the anticipated timing and duration of the leave."  Def.'s Ex. 1A, dkt. no. 35-1, at 8.  Second, she must inform her supervisor of her request.  Third, she must comply with documentation requirements that may attach to her leave.  Fourth, once FMLA leave is granted, the employee must continue to apprise her supervisor and human resources about the progress of her leave and her return-to-work date.  Fifth, if leave is "taken intermittently for a reason for which FMLA leave has been granted," the

employee must "report each instance in which leave is taken by submitting a time card or faculty absences report in accordance with payroll submission deadlines." *Id.*

McLaren does not dispute that this is the College's written policy, but she argues that this is a "made up" policy in the sense that it is not actually enforced. As evidence of this, McLaren points out that after her FMLA leave request was approved in March 2012, she never called human resources to report her FMLA absences. Instead, she did what she did for her absences in December: she notified her supervisor that she would be missing work and indicated her absences on her timecards. McLaren argues that the College has invented a notice policy for this litigation and has misrepresented the policy in the papers it has submitted to the Court.

The Court disagrees. The undisputed facts show that in order to request and gain approval for FMLA leave at Wheaton College, an employee must follow the prescribed steps to give notice to the College. The record also indisputably shows that McLaren did this in early 2012 when she met with Granger and was deemed qualified for FMLA leave beginning on December 1, 2011. Because McLaren took FMLA leave intermittently, she was required to follow step five's notice requirements after she was deemed eligible. The parties appear to agree that McLaren adequately followed step five for several months, until she exhausted her FMLA leave and could not take any more. The College does not contend that McLaren should have called human resources for each and every absence; as McLaren points out, this would be a greater burden than the notice policy imposes on persons who are approved for intermittent FMLA leave. Instead, the College contends that McLaren failed to follow step one because she did not provide information to human resources for renewal of her FMLA

status.

The record contains evidence from which a reasonable jury could find otherwise. McLaren testified that she met with either Granger or Haddock in November 2012 about her FMLA status and was told that she was not required to do anything to begin her new FMLA year in December 2012. Although Granger and Haddock both stated under oath that they had no such conversation with McLaren, "it is the prerogative of [a] jury," not a judge, "to weigh and balance the credibility of each and every witness and disbelieve or believe any or all reasonable testimony and evidence offered to support an employment decision." *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000). The College argues that McLaren's testimony is inadmissible hearsay and should not be considered at summary judgment, but this is plainly incorrect. McLaren contends that either Granger or Haddock, in her capacity as an agent of the College, informed McLaren that she had satisfied step one of the College's notice policy. Under Federal Rule of Evidence 801(d)(2), McLaren's testimony is not hearsay.

The College contends that McLaren nonetheless failed to abide by its FMLA notice policy because she did not indicate to her supervisor that her absence was due to her FMLA-qualifying ailment. As explained above, Abay's notes indicate that McLaren called in "sick" but do not indicate that she gave any additional information, and Abay testified that she did not know McLaren had a back condition until this lawsuit was filed. As the College points out, "in the usual case, an employee's bare assertion that he is 'sick' is insufficient." *Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006). Neither Abay nor McLaren could recall whether McLaren mentioned her back pain when she called Abay, but McLaren testified that it would be unlike her to say only that she

was "sick."  The College argues that the Court cannot consider McLaren's speculative testimony, especially in light of evidence in the record showing she called in "sick" on other occasions.

The evidence here too presents a genuine question of disputed material fact, for this case does not reflect "an employee's bare assertion that [s]he [was] sick."  *Id.* Instead, it reflects an employee who had used the entirety of her 12-week FMLA leave during the 12-month period from December 1, 2011 to November 30, 2012, and who testified that she notified human resources and her supervisors that she planned to miss time to be treated for her FMLA-qualifying ailment as soon as her new FMLA year began in December 2012.  Moreover, the College's FMLA notice policy does not provide that an employee taking approved intermittent FMLA leave must expressly invoke the statute every time she takes leave.  Step five provides that when an employee is taking intermittent FMLA leave, she must "submit[] a time card . . . in accordance with payroll submission deadlines" and "[d]esignate FMLA hours as such on documentation" by "either referenc[ing] the FMLA or stat[ing] the approved reason for which leave is being taken."  Def.'s Ex. 1A, dkt. no. 35-1, at 8.  The College's timecards do not include a line for FMLA leave, and according to McLaren, anytime she submitted timecards with her FMLA leave indicated between December 2011 and September 2012, she simply indicated she was taking "personal" time and human resources followed up with her to confirm.

Wheaton College makes much of the fact that the Department of Labor's 2009 amendments to the regulations implementing the FMLA place upon the leave-seeking employee the responsibility to abide by her employer's notice requirements.  *See* 29

C.F.R. § 825.303(c).  The College argues that in light of this regulation, McLaren's notice was insufficient because the College did not have enough information to determine whether she was seeking FMLA leave.  But section 825.303(c) does not negate an employer's duty, "[o]nce an employee informs his employer of his probable need for medical leave, . . . to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." *Burnett*, 472 F.3d at 480. Indeed, even in the years since the Department of Labor issued this regulation, courts in this district have recognized the employer's duty "to request additional information as necessary." *Segura v. TLC Learning Ctr.*, No. 12 C 7020, 2015 WL 93910, at *3 (N.D. Ill. Jan. 6, 2015).  Section 825.303(c) simply augments this duty:  an employee is responsible for abiding by her employer's notice policies, but if she does so opaquely, the employer may not mount an ostrich defense based on the employee's notice being somewhat vague.

In sum, the evidence would permit a reasonable jury to conclude that McLaren abided by the College's true notice policy—consisting not only of the College's written terms, but also of the protocols it regularly followed in implementing them.  A jury could reasonably conclude that McLaren satisfied the College's first and second notice requirements when she asked a member of the College's staff responsible for administering the College's benefits programs what she needed to do to reactivate her FMLA qualification and was told that the College had everything it needed.  It could also reasonably conclude, in light of all the evidence, that McLaren satisfied step five when she called Abay and submitted her timecard indicating that she was missing time for "personal" leave.  The Court denies the College's motion for summary judgment on

count 1.

**B.     FMLA interference claim (count 2)**

To establish an FMLA interference claim, an employee must show "that her employer deprived her of an FMLA entitlement." *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008).  The plaintiff-employee has the burden of showing that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014) (internal quotation marks omitted).  McLaren contends that the evidence indisputably shows that each of these elements was satisfied and summary judgment should therefore be granted in her favor.  The College does not dispute that it is an FMLA employer or that McLaren was eligible for FMLA protection.  It disagrees, however, that there is evidence to support the reasonable inference that the other three elements of McLaren's FMLA claim were satisfied.  Specifically, the College contends that the evidence indisputably shows that McLaren did not provide notice in accordance with the College's FMLA policy, that she therefore was not entitled to FMLA benefits when she missed work on December 3 and 4, 2012, and that she was fired for a legitimate reason unrelated to her FMLA leave.

As the Court explained in the previous section, a genuine factual dispute exists concerning whether McLaren gave adequate notice to the College.  The record contains admissible evidence that suggests McLaren never spoke with human resources or her supervisor to request that she be granted a new year of FMLA leave beginning

December 1, 2012.  It also contains admissible evidence that suggests that even if she did follow those required steps, she failed to follow the fifth and final step in the College's FMLA notice policy when she called Abay and submitted her timecard for her absences on December 3 and 4, 2012.  On the other hand, there is competent evidence—namely, McLaren's testimony—that supports the notion that McLaren followed the College's FMLA notice policy, at least insofar as she did as she was instructed by the College or its designated agents and complied with standard accepted practices.

Finally, the College argues that even if McLaren did all she was required to do to put the College on notice, summary judgment should be granted against her because the evidence shows the College terminated her for a noninvidious reason.  It is worth noting that the Seventh Circuit has stated that "[t]he difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent while an interference theory requires only proof that the employer denied the employee his or her entitlements under the Act."  *Goelzer*, 604 F.3d at 995 (internal quotation marks omitted).  Still, an employer that would have taken action against an employee regardless whether she took FMLA leave is not guilty of FMLA interference.  *Id.* at 993.  Whether the College had a legitimate reason for terminating McLaren is therefore relevant to her interference claim, not because interference claims require a showing of retaliatory intent, but because when an employer decides to terminate an employee who fails to meet expectations, the employee is not "entitled to leave under the FMLA."

For the aforementioned reasons, this too is a question for a jury to consider.  As of the end of November, McLaren had been told directly that her absenteeism was a

problem that would lead to her termination if she had another unexcused absence.  In other words, the evidence would permit a reasonable jury to conclude that prior to her absence on December 3, 2012, McLaren's performance was not so abysmal that her employer felt the need to terminate her.  It was only after—immediately after—she missed work in early December that her employer decided her absenteeism was an offense requiring termination.  If a jury were to conclude that McLaren adequately abided by the College's FMLA notice policy and her December 3 and 4 absences were FMLA leave days, the evidence would permit the jury to determine that but for McLaren exercising her right to take FMLA leave, she would not have been terminated.  The evidence does not inexorably require this result, but it would permit it.  The Court therefore denies both parties' motions as to McLaren's interference claim.

## Conclusion

For the foregoing reasons, the Court denies Wheaton College's motion for summary judgment [dkt. no. 33] and McLaren's motion for partial summary judgment [dkt. no. 36].  The case is set for trial on August 29, 2016 at 9:45 a.m.  The final pretrial order is to be filed by August 15, 2016.  The final pretrial conference is set for August 25, 2016 at 3:30 p.m.  The case is set for a status hearing on August 1, 2016 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 11, 2016

23